**SEALED**

FILED
November 04, 2020
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____BC_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | CRIMINAL NO. 5:20-CR-0518-JKP |
| | § | |
| v. | § | **SEALED** |
| | § | **INDICTMENT** |
| | § | |
| RONALD WAYNE SCHROEDER, (1), | § | COUNT 1: 18 U.S.C. § 1349, Conspiracy to Commit Bank Fraud |
| JILL MARTIN ALVARADO (2), | § | COUNT 2: 18 U.S.C. § 1956, Conspiracy to Commit Money Laundering |
|  | § | COUNT 3: 18 U.S.C. § 1956, Conspiracy to Launder Monetary Instruments |
| PHYLLIS JO MARTINEZ (5) | § | COUNTS 4-6: 18 U.S.C. § 1344, Bank Fraud |
| | § | NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE |

**THE GRAND JURY CHARGES:**

**GENERAL ALLEGATIONS**

At all times relevant herein:

**A.    FACTORING**

1.    Invoice factoring is a practice whereby a company sells specific accounts receivable to a third party (typically banks or other capital providers) at a discounted price in order to accelerate its cash flow. When done legitimately, the company's accounts receivable is supported by legitimate underlying invoices, whereby that company had previously billed a third party to compensate them for whatever particular services or products have been rendered

or made. The third party for whom the work was performed is the ultimate source of repayment for the factoring entity.

2. In invoice factoring, the factoring entity relies upon the legitimacy of the invoices in that those invoices represent current, viable, and collectable accounts receivables.

3. FactorView is a cloud based accounts receivable and invoice factoring software. FactorView is designed specifically for invoice and accounts receivable factoring. The funding entity, such as a financial institution, relies upon the information submitted into FactorView when determining whether to pay a particular invoice/accounts receivable.

**B. PERSONS AND ENTITIES**

4. **RONALD WAYNE SCHROEDER ("SCHROEDER")** is involved in the factoring business whereby he acts as a middleman between financial capital providers and clients seeking to factor accounts receivables. At various times from on or about January 1, 2017, until the date of this Indictment, **SCHROEDER** acted as a middle man for three different FDIC insured financial institutions—SouthWest Bank, Bank of San Antonio, and TransPecos Bank (collectively the "financial institutions").

5. Republic Logistics is a company created by **SCHROEDER** to factor false invoices and accounts receivables. **SCHROEDER** submitted false and fraudulent invoices on behalf of Republic Logistics and was able to fraudulently obtain $3,810,364.29 from the Bank of San Antonio using false invoices and information.

6. Texas Express Capital, LLC (Texas Express Capital) is a company created by **SCHROEDER** to factor accounts receivables funded by TransPecos Bank.

7. **JILL MARTIN ALVARADO ("JILL ALVARADO")** and ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ are the married co-owners of a trucking company named Alvy's Logistics d/b/a

2

Alvy's Trucking, LLC ("Alvy's"). **JILL ALVARADO** and ▇▇▇▇ assisted **SCHROEDER** in providing false and misleading invoices and information to the financial institutions to factor false and misleading invoices and accounts receivables from Alvy's to the financial benefit of **SCHROEDER, JILL ALVARADO,** and ▇▇▇▇.

8.   ▇▇▇▇ and **PHYLLIS JO MARTINEZ ("PHYLLIS MARTINEZ")** are current (**PHYLLIS MARTINEZ**) and former (▇▇▇▇) owners of a cleaning company called Nerd Factory, LLC ("Nerd Factory"). ▇▇▇▇ and **PHYLLIS MARTINEZ** assisted **SCHROEDER** in providing false and misleading invoices and information to the financial institutions to factor false and misleading invoices and accounts receivables from Nerd Factory to the financial benefit of **SCHROEDER,** ▇▇▇▇ and **PHYLLIS MARTINEZ**.

9.   SouthWest Bank is a financial institution insured by the Federal Deposit Insurance Corporation.

10.   The Bank of San Antonio is a financial institution insured by the Federal Deposit Insurance Corporation.

11.   TransPecos Bank is a financial institution insured by the Federal Deposit Insurance Corporation.

**C.   THE CONSPIRACY**

12.   Beginning on or about April 1, 2017 and continuing until the date of this Indictment, the Defendants,

**RONALD WAYNE SCHROEDER, (1),**
**JILL MARTIN ALVARADO (2),**
▇▇▇▇
**PHYLLIS JO MARTINEZ (5)**

3

did conspire with each other and with others known and unknown to the grand jury to defraud SouthWest Bank, the Bank of San Antonio, and TransPecos Bank (the "financial institutions") by creating and submitting false, fraudulent, and misleading invoices and information to the financial institutions so as to induce the financial institutions to fund factored invoices and accounts receivables which the financial institutions would not otherwise pay or purchase accounts receivables.

13. The object of the conspiracy was to obtain money from the financial institutions through the factoring of false and fraudulent invoices and providing false and fraudulent information concerning those invoices. As part of the conspiracy, money from the financial institutions would be used for the profits of **RONALD WAYNE SCHROEDER, JILL MARTIN ALVARADO,** ███ ███████, ███ ████████, and **PHYLLIS JO MARTINEZ** and used to pay old invoices and debt thereby allowing the scheme to continue and grow. Money would also be transferred between accounts controlled by the Defendants to further the scheme to defraud and for the profits of the Defendants. As part of the conspiracy, **SCHROEDER** would submit false and misleading information to the financial institutions which would result in payment to Republic Logistics, Alvy's and Nerd Factory. Some of this money would be returned to **SCHROEDER** and used for his own profit.

**COUNT ONE**
**Conspiracy to Commit Bank Fraud**
**[18 U.S.C. § 1349]**

14. Count One incorporates by reference, as if fully set forth herein, paragraphs one through thirteen of this Indictment.

4

15. Beginning on or about April 1, 2017, and continuing until on or about the date of this Indictment, in the Western District of Texas, and elsewhere, the Defendants,

**RONALD WAYNE SCHROEDER, (1),**
**JILL MARTIN ALVARADO (2),**
███████████ and
**PHYLLIS JO MARTINEZ (5)**

did knowingly and intentionally conspire and agree with each other and with others known and unknown to the Grand Jury to commit certain offenses against the United States, namely Bank Fraud, in violation of 18 U.S.C. § 1344(2), that is, knowingly having devised and having intended to devise a scheme and artifice to defraud, and to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a federally insured financial institution, by means of materially false and fraudulent pretenses, representations, and promises, in this case, a fraudulent scheme to use fake, fraudulent, and misleading invoices and information concerning those invoices to obtain money from financial institutions.

All in violation of Title 18, United States Code, Section 1349.

**COUNT TWO**
**Conspiracy to Commit Money Laundering**
**[18 U.S.C. § 1956(h)]**

16. Count Two incorporates by reference, as if fully set forth herein, paragraphs one through fifteen of this Indictment.

17. Beginning on or about April 1, 2017, and continuing until on or about the date of this Indictment, in the Western District of Texas, and elsewhere, the Defendants

**RONALD WAYNE SCHROEDER, (1),**
**JILL MARTIN ALVARADO (2),**

5

███████████ and
**PHYLLIS JO MARTINEZ (5)**

did knowingly combine, conspire, and agree with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, to wit: Bank Fraud in violation of 18 U.S.C. §1344, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT THREE
**(Conspiracy to Launder Monetary Instruments)**
**(18 U.S.C. §§1956(h) & 1957)**

18.   Count Three incorporates by reference, as if fully set forth herein, paragraphs one through seventeen of this Indictment.

19.   Beginning on or about April 1, 2017, and continuing until on or about the date of this Indictment, in the Western District of Texas, and elsewhere, the Defendants

**RONALD WAYNE SCHROEDER, (1),**
**JILL MARTIN ALVARADO (2),**
███████████
**PHYLLIS JO MARTINEZ (5)**

6

did intentionally and knowingly combine, conspire, confederate, and agree together and with others known and unknown to the Grand Jury, to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, to wit: Bank Fraud in violation of 18 U.S.C. §1344, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT FOUR
### (Bank Fraud)
### (18 U.S.C. §1344(2))

20. Count Four incorporates by reference, as if fully set forth herein, paragraphs one through nineteen of this Indictment.

21. Between on or about May 27, 2020 and on or about June 4, 2020, in the Western District of Texas and elsewhere, the Defendant

**RONALD WAYNE SCHROEDER, (1),**

knowingly executed and attempted to execute a scheme or artifice to defraud TransPecos Bank, a federally insured financial institution to obtain moneys, funds, and credits, owned by and under the custody and control of TransPecos Bank by means of material false and fraudulent pretenses, representations, and promises.

**The Manner and Means**

22. It was part of the scheme that Defendant **SCHROEDER** submitted false, fraudulent, and misleading information to TransPecos Bank to induce the sale of false and misleading accounts receivables by TransPecos Bank.

7

## Execution of the Scheme

23. On or about October 13, 2014, **SCHROEDER** started a factoring company with another individual. On or about April 27, 2017, **SCHROEDER** sold this company to Southwest Bank. On or about August 1, 2019, **SCHROEDER** induced Bank of San Antonio to purchase and buy out factoring accounts, which were previously funded by Southwest Bank. Alvy's and Nerd Factory were two of the accounts. **SCHROEDER** provided false information regarding the viability and age of the accounts receivables of Alvy's and Nerd Factory to Bank of San Antonio. Relying upon information provided by **SCHROEDER**, the Bank of San Antonio, through its subsidiary, Texas Express Funding LLC (Texas Express Funding), purchased at least four (4) of the client accounts to include Alvy's and Nerd Factory.

24. In May of 2020, **SCHROEDER** solicited TransPecos Bank to loan **SCHROEDER** approximately $16 million dollars to purchase certain accounts receivables from Texas Express Funding. **SCHROEDER** informed TransPecos that the loan would be secured by accounts receivables purportedly owed to Texas Express Funding, including accounts receivables owned by Alvy's, Nerd Factory, and Republic Logistics.

25. To induce this investment, **SCHROEDER** sent the following false and misleading information:

(a). On or about May 27, 2020, **SCHROEDER** sent a client list to TransPecos Bank which contained false information on the business and viability of several clients. **SCHROEDER** falsely stated that some clients had due and owing accounts receivables. **SCHROEDER** knew this information to be false.

8

(b).     On or about May 27, 2020, **SCHROEDER** sent to TransPecos Bank a document entitled Texas Express Funding AR Aging as of 4/15/20. This statement falsely stated the accounts receivables owed to Texas Express Funding. **SCHROEDER** knew this information to be false.

(c).     On or about May 29, 2020, **SCHROEDER** sent to TransPecos Bank a balance sheet for Texas Express Funding as of May 15, 2020 which falsely stated Texas Express Funding had $19,065,455.92 in valid factored receivables. This document also falsely stated that Texas Express Funding had $17,872,994.41 in total assets. **SCHROEDER** knew this information to be false.

(d).     On or about June 3, 2020, **SCHROEDER** sent to TransPecos Bank a second Texas Express Funding Balance sheet, which purported to be current as of December 31, 2019. This document falsely stated that Texas Express Funding had $17,090,369.86 in valid factored receivables and $15,624,586.39 in total assets. **SCHROEDER** knew this information to be false.

(e).     On or about June 3, 2020, **SCHROEDER** sent to TransPecos Bank a false income statement for Texas Express Funding for the year 2019. **SCHROEDER** knew this information to be false.

(f).     On or about June 4, 2020, **SCHROEDER** sent to TransPecos Bank a document entitled "TEF 12-31-19 Income Statement." This document falsely stated that Texas Express Funding made approximately $1 million a year in profit. **SCHROEDER** knew this information to be false.

All in violation of 18 U.S.C. §1344(2)).

9

## COUNT FIVE
## (Bank Fraud)
## (18 U.S.C. §1344(2))

26. Count Five incorporates by reference, as if fully set forth herein, paragraphs one through twenty-five of this Indictment.

27. On or about June 12, 2020, in the Western District of Texas and elsewhere, the Defendant

**RONALD WAYNE SCHROEDER (1),**

knowingly executed a scheme or artifice to defraud TransPecos Bank, a federally insured financial institution to obtain moneys, funds, and credits, owned by and under the custody and control of TransPecos Bank by means of material false and fraudulent pretenses, representations, and promises.

### The Manner and Means

28. It was part of the scheme that **SCHROEDER** submitted false, fraudulent, and misleading information to TransPecos Bank through FactorView to obtain a wire of $1,067,956.32 from TransPecos Bank.

### Execution of the Scheme

29. Between June 1, 2020 and July 31, 2020, **SCHROEDER,** through his company Texas Express Capital, entered into an agreement with TransPecos Bank whereby TransPecos Bank agreed to purchase valid accounts receivables from factoring clients of Texas Express Capital. The contract is dated June 12, 2020. The mechanism of the funding was that **SCHROEDER** would submit information regarding the purported account receivable into

FactorView. TransPecos Bank would view and the information submitted by **SCHROEDER** into FactorView when deciding whether to fund a factored accounts receivable.

30. Prior to June of 2020, **SCHROEDER** had an existing financial relationship with a customer (hereinafter referred to as "Customer 1"). Customer 1's business model was to obtain a purchase order from a prospective client for work to be done for that client. Before commencing any work, Customer 1's client must first pay 75% of the purchase order upfront to Customer 1. As such, the most that could be invoice factored from any given job of Customer 1 would be 25%, which would represent the remaining due and owing balance of completed work.

31. On or about May 29, 2020, Customer 1's client ("Client 1") submitted a purchase order for $2,638,674.32 worth of goods and services from Customer 1. On or about June 5, 2020, Customer 1 informed **SCHROEDER** that Client 1 had paid $1,990,537.29 in advance for these goods and services as set forth in the purchase order.

32. On or about June 11, 2020, **SCHROEDER**, through his company Texas Express Capital, signed a factoring agreement with Customer 1. The agreement stated in pertinent parts that:

>  (a). Each account offered for sale to factor is an "undisputed statement of indebtedness" for "a sum certain which is due and payable . . .";
> 
>  (b). "Each Account offered for sale to FACTOR is an accurate statement of a bona fide sale, delivery, and acceptance of merchandize or performances or services by Client to Debtor"; and
> 
>  (c). "[T]he purchase of Purchased Accounts by FACTOR is a true purchase of such Accounts by FACTOR and the true sale of such Accounts by CLIENT, and is not a disguised loan and security agreement."

**SCHROEDER** provided this agreement to TransPecos Bank. TransPecos relied upon this agreement in making funding decisions for information and invoices submitted by **SCHROEDER**.

33. On or about June 12, 2020, **SCHROEDER** entered into FactorView certain false and misleading information regarding Customer 1's purchase order from Client 1. **SCHROEDER** entered information into FactorView which falsely demonstrated a due and owing account receivable from Client 1 to Customer 1.

34. On or about June 12, 2020, **SCHROEDER**, through FactorView, requested funding from TransPecos Bank of $1,067,956.32 to be paid into a bank account controlled by Customer 1.

35. On or about June 12, 2020, TransPecos Bank, relying upon the false and misleading information submitted by **SCHROEDER** into FactorView concerning Customer 1, wired 1,067,956.32 into a bank account controlled by Customer 1.

All in violation of 18 U.S.C. §1344(2)).

## COUNT SIX
### (Bank Fraud)
### (18 U.S.C. §1344(2))

36. Count Six incorporates by reference, as if fully set forth herein, paragraphs one through thirty-five of this Indictment.

37. On or about July 14, 2020, in the Western District of Texas and elsewhere, the Defendant

**RONALD WAYNE SCHROEDER (1),**

12

knowingly executed a scheme or artifice to defraud TransPecos Bank, a federally insured financial institution to obtain moneys, funds, and credits, owned by and under the custody and control of TransPecos Bank by means of material false and fraudulent pretenses, representations, and promises.

### The Manner and Means

38. It was part of the scheme that **SCHROEDER** submitted false, fraudulent, and misleading information to TransPecos Bank through FactorView to obtain a wire of $825,000 from TransPecos Bank.

### Execution of the Scheme

39. On or about July 14, 2020, **SCHROEDER** entered into FactorView certain false and misleading information regarding Customer 1's purchase order from Client 1. **SCHROEDER** entered information into FactorView which falsely demonstrated a due and owing account receivable from Client 1 to Customer 1.

40. On or about July 14, 2020, **SCHROEDER**, through FactorView, requested funding from TransPecos Bank of $825,000 to be paid into a bank account controlled by Customer 1.

41. On or about July 14, 2020, TransPecos Bank, relying upon the false and misleading information submitted by **SCHROEDER** into FactorView concerning Customer 1, wired $825,000 into a bank account controlled by Customer 1.

All in violation of 18 U.S.C. §1344(2)).

### NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE
[*See* FED. R. CRIM. P. 32.2]

This Notice of Demand for Forfeiture includes but is not limited to the properties described below in Paragraph III-VI.

### I.
### Bank Fraud and Conspiracy and Forfeiture Statutes
[Title 18 U.S.C. §§ 1349 and 1344, subject to forfeiture
pursuant to Title 18 U.S.C. § 982(a)(2)(A)]

As a result of the foregoing criminal violations set forth in Counts One and Four through Six, the United States gives notice to Defendants of its intent to seek the forfeiture of certain properties upon conviction pursuant to FED. R. CRIM. P. 32.2 and 18 U.S.C. § 982(a)(2) which states:

> **Title 18 U.S.C. § 982. Criminal forfeiture**
> (a)(2) The court, in imposing sentence on a person convicted of an offense in violation of, or a conspiracy to violate---
> (A) section . . . 1344 of this title . . .
> shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation.

### II.
### Money Laundering and Forfeiture Statutes
[Title 18 U.S.C. §§ 1956(h) and 1957, subject to forfeiture
pursuant to Title 18 U.S.C. § 982(a)(1)]

As a result of the foregoing criminal violations set forth in Counts Two through Three, the United States gives notice to Defendants of its intent to seek the forfeiture of certain properties upon conviction pursuant to FED. R. CRIM. P. 32.2 and 18 U.S.C. § 982(a)(1), which states:

> **Title 18 U.S.C. § 982. Criminal forfeiture**
> (a)(1) The court, in imposing sentence on a person convicted of an offense in violation of section 1956 . . . of this title, shall order that the person forfeit to

the United States any property, real or personal, involved in such offense, or any property traceable to such property.

### III.
### Real Property

Real Property located and situated at **515 Paradise Pointe Drive, Port Aransas, Nueces, County, Texas** with all buildings, appurtenances, and improvements, thereon and any and all surface and sub-surface rights and interests, if any, and being more fully described as:

Lot Sixty-Seven (67), Paradise Point, N.U.D. Unit 1, City of Port Aransas, Nueces County, Texas, according to the map or plat thereof recorded in Volume 67, Pages 127-129, Map Records of Nueces County, Texas.

### IV.
### Personal Property

1. 2017 Voltage Fifth Wheel Recreational Vehicle, Model VT380517, VIN 4YDF38038HZ990619;
2. 2018 Jeep Wrangler Unlimited Sport, VIN 1C4HJXDG2JW130022;
3. 2019 Ford Mustang, VIN 1FA6P8CF6K5134270;
4. American Momentum Bank Cashier's Check #066506 in the amount of $54,694.81;
5. Marion State Bank Cashier's Check #105181 in the amount of $18,000.00;

### V.
### Money Judgment

**Money Judgment:** A sum of money which represents the property involved in and the amount of proceeds obtained, directly or indirectly, from the violations set forth above, for which each Defendant is liable; and

### VI.
### Substitute Assets

If any of the property described above, as a result of any act or omission of the Defendants:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the Court;
    d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek the forfeiture of any other property owned by Defendants as substitute assets up to the value of the Money Judgment pursuant to FED. R. CRIM. P. 32.2 and Title 21 U.S.C. § 853(p).

A TRUE BILL

FOREPERSON OF THE GRAND JURY

GREGG N. SOFER
United States Attorney

By: _____
FOR JOSEPH E. BLACKWELL
Assistant United States Attorney

16